I feel that I should somehow cue up the William Tell overture and that I should begin by advising you where in the days of yesteryear this complaint, your honors, was filed prior to Iqbal and C. There was not an amendment allowed after the dismissal of the City of Reno and Washoe County. For that reason alone, the court should consider whether or not this case should be reversed for that amendment as an abuse of discretion given the change of case law that is something that is fairly well established now. And I quote from a 2010 case that I have in the briefing papers, under Monell, municipal liability may be based on an expressly adopted official policy, a longstanding practice or custom, or the decision of a person with final policymaking authority. That was briefed, your honors, in the appellate brief, but I think the complaint fairly screams of needing to be amended to add the fact that the decisions of the persons with final policymaking authority are what caused the incidents that gave rise to this litigation. It does not matter that the final policymaker may have subjected only one person to only one constitutional violation. A municipality can be liable for an isolated constitutional violation when the person causing the violation has final policymaking authority. Now, your honor, the complaint is replete with facts, lots and lots of facts. There are downsides to facts because there are so many that must be proven. But on the other hand, the upside is there were plenty of facts to show in this case what happened when those criminal charges were filed against Sergeant Kutznagel. The testimony of a 17-year-old just returning from a concert where she drank alcohol and smoked marijuana, that evidence was not presented to the grand jury. Any peace officer would look for the piece of corroborating evidence when this was the only evidence that was coming before them, the testimony of a 17-year-old. The basis for the arrest, the basis for, was the basis for his termination from his employment, the most important and critical part of this case. The case, the complaint, pled the facts about the retaliation. The other motive, the reason that the police force took the opinion that it did to determine that it would go forward with little or no evidence to prosecute Sergeant Kutznagel, there was retaliation for him complaining about the fact that their SWAT team had not practiced, was not in good form, was a threat to the public health and safety. Because we had that overriding and pled fact, that was the reason for the retaliation. It was other than this prosecution that went forward. Are you proceeding on a failure to train theory? Your Honor, my complaint, I would not proceed on a failure to train theory. I would proceed on an official, on the official policymaking. I am arguing this appeal because I believe the facts are sufficient. I did not begin this case. But I would tell you that the facts are sufficiently pled to certainly support that the chief of police adopted all of this as the policy of the city of Reno. In the complaint, you say that the treatment was contrary, quote, contrary to department policy. And it also says that the conduct was expressly prohibited by city policy. Well, Your Honor, that is very important because when a municipality violates its own policies and that then is adopted by the final policymaker, that on its face, Your Honor, shows that there is a violation of the city's policy. Now, I would argue that there is a violation of the city's policy. And any time, and particularly in this situation, where Sergeant Pitsnagel was not told that he was the subject of an internal affairs investigation, and the fact that that information, I'm sorry, I'm hitting on, of the facts that go on and on about what occurred in that trial where the prosecuting attorney had a large map that if you were in the city of Reno, of that site, you could not possibly forget the fact that a large 24-hour well-lit Kmart was right there. And the, and what was presented to this grand jury did not show that. It looked like an isolated area where this woman was stopped. Who presented it to the grand jury? The district attorney who was a deputy district attorney who was a final policymaker for the county of Washoe as to how this case would be provided, would be prosecuted, Your Honor. And it went on and on. The fact that he had on 35 pounds of equipment and was sitting in the front of a police car, did anyone go and look if that, what he was alleged to have done could actually have happened? That, again, was something that he had to prove because they had not done it in his acquittal. There was no reason, there were so many obvious reasons this case should not have gone forward against Sergeant Pitsnagel. The reason was it was an excuse to get him, the boy scout of the police department, the, the sergeant who had led our police officers down to Katrina, who was in the newspaper, who had gotten a lot of good, favorable publicity, but who said you can't put that SWAT team on the streets because you're endangering the public. What's the showing of connection between that and this incident? That because they had a vendetta, because they had a vendetta, they waited for one thing, for him to do one thing. What's the evidence of that? Oh, we have done depositions. We have at least five or six depositions because discovery went on during the timeframe that we waited for, I believe, approximately a year for the motion to dismiss to go forward. So we certainly had that evidence to go forward that would have proven the, the facts and, and, Your Honor, this is an allegation of fact in the complaint. The allegation is there was a vendetta against Sergeant Pitsnagel. And I believe that that should be taken as, as true because he was the complaining party. And further, Your Honors, a 1983 plaintiff may rebut this presumption, however, by showing that the district attorney, and when we're talking about qualified immunity by the district attorney, was pressured or caused by the investigating officers to act contrary to his independent judgment. And that is the reason when, when we, when we put together the fact that we have this list of facts and this lack of exculpatory evidence that was brought forward in conjunction with the fact we have a prosecuting attorney who did not exercise his independent judgment, all alleged in the complaint, there should be a reason that this should, this should definitely survive a motion for summary judgment, a motion for, to dismiss. The allegations are indeed sufficient because the intention by these parties that was alleged gets past qualified immunity. The policymaker decision gets past the requirements of Monell. So in both instances, there are sufficient facts complained of in this, in this complaint that gets this party past a motion to dismiss against these two municipal entities. Isn't this just a case of suing the wrong defendants? Your Honor, the parties that were sued were the city of Reno, where he worked and who fired him, and used this prosecution as a basis to fire him. The county of Washoe who prosecuted him based upon the false statements by the officers who testified from the city of Reno. I don't know what other defendants. Well, whether they did so as a matter of policy is what we're concerned about, I think. And, Your Honor, I believe they meet the third, third definition of policy, and that is when an official, and that would be certainly the deputy district attorney is a policymaker, and secondly, the chief of police who fired him is a policymaker and certainly qualifies under the third prong or the third qualification for such a case. And I would ask that I be able to save the rest of my time for rebuttal. Thank you, counsel. We'll hear from the defendants. Good morning. Donald Christensen on behalf of the city of Reno. Are you going to share time? I am, and I'm attempting to reserve approximately half of my time or the time for the respondents. All right. By the county. With respect to the very first point that was raised by the appellant's counsel, this complaint was filed before the Twombly case. It was actually filed about a year after Twombly. Twombly was in 2007. This case was filed in October of 2008. But in any event, the city of Monell was well established in terms of what had to be shown for relief under that. Absolutely. Absolutely. And the appellant, as far as I can tell, keeps going back to this idea that there's lots of facts alleged in the complaint. Well, there are lots of facts, but it's all about what individual employees did or allegedly did. And as Justice Trott identified, the allegations of the complaint, they're replete with examples of where the complaint specifically alleges that particular numbers of those officers that are referred to in the complaint acted contrary to policies and practices that were already established. Those officers themselves were not policymakers, as far as I can tell, including poll men. Well, that's absolutely. There's no allegation to that effect anywhere in the complaint of any policymaker acting on behalf of the city. Well, that goes to Judge Cudahy's question as to whether or not the wrong defendants were sued in this case. All the real allegations of wrongdoing are against individual employees that are never alleged to be policymakers in any manner on behalf of the city of Reno. And that's just insufficient, as we all know, in order to establish liability under Monell. It's not a respondeat superior. Basis of liability is not permitted. Specifically, I mean, Paragraph 46 alleges Officer Chalmer, he was one of the first officers to interview the plaintiff, acted contrary to RPD policies. Another officer was supposedly acting pursuant to a personal vendetta and was acting specifically alleged to be acting outside the scope of his duties. The principal internal affairs investigator, again, in Paragraph 66 and 67, the allegation is that she performed acts expressly prohibited by policies and procedures. And these all go to the second prong of Twombly, which is you have to show plausibility. I mean, there's just simply no plausible basis stated for relief against a city when the city had policies and procedures, apparently, because the specific allegation is that all these officers acted absolutely contrary to those. And that's the exact opposite of what you're saying. It's irreconcilable with what's necessary to proceed on this theory. Exactly right. Officer, excuse me, Employee Pullman is, with respect to the basis, supposedly the motive for going against, acting against the plaintiff, the plaintiff says that that's all because the, that Sergeant Pullman, excuse me, Sergeant Bissnagel made recommendations regarding different standards that should be followed by the SWAT team. And states specifically that that was one of the reasons why several employees, including Employee Pullman, acted as they did against him. But then the very next paragraph, Paragraph 75, says as soon as Pullman heard about these suggestions, he immediately ordered changes to be made, which is, again, contrary to why would you retaliate against someone if you agree with what they're suggesting and you implement? I mean, none of this satisfies the plausibility requirements under Twombly. With respect to the leave to amend, and let me just also say, I still don't, I still have not, if it was stated, I didn't hear it, and I still don't have a grasp of what it is further that would be alleged to establish a policy. In our view, any kind of remand with allowing leave to amend would be futile at this point. I mean, it's been six years past the incident itself. I mean, since then, there's been a jury trial on his criminal charges. There was not in the record, but he's gone. Sergeant Pullman had a, as a result of his termination of his employment, had a nine-day arbitration hearing that was subsequently upheld by the, confirmed by the district court, state district court. If there was some facts someplace, he says they conducted depositions, where's the facts still out of all that to establish any kind of a customer policy on behalf of the city of Reno? Nothing's been specifically identified that I'm aware of. At the district court, plaintiff never did ask the district court for leave to amend with respect to any of the allegations to establish a customer policy that caused a constitutional violation to the plaintiff. The plaintiff asked, the only request made to the district court was a request for leave to amend to add, to allege a specificity that dates on particular acts of slander occurred to one of the state law claims. In their opening brief here, they never really identified anything. I mean, I think in our answering brief, we pretty much challenged the plaintiff to identify for us if you got it. Tell us where in the complaint anything is shown that shows that there was a policy or practice or custom of the city of Reno that caused some constitutional violation to the plaintiff. And in response, the plaintiff just goes back to all these allegations of supposed wrongdoing by all these individual officers, and it's not simply, it's simply not sufficient. I think that this case, I found a case preparing for this argument, the case of Daugherty v. City of Covina at 654 Fed 3rd, 892. This same court, Ninth Circuit, found under these sort of similar circumstances where the plaintiff didn't identify, never identified any particular facts in the district court, didn't identify specific facts in either of their briefs or even at argument before the Ninth Circuit. In that case, what they did was they found that it would be futile to send it back. There's simply no reason to do so. They have failed in every way to provide any facts that would provide a basis for liability against the city. Unless the Court has any further questions, I'll at least list my time to the Court. All right. It appears not. Good morning. David Watsby, Elmwood, the Washoe County District Attorney's Office, and may it please the Court. Representing Washoe County, I'd like to reiterate a lot of the same arguments that Mr. Christensen just made, and specifically to address something at least in part that Judge Kadehi addressed. Kadehi. Kadehi. Kadehi, I apologize. That's close enough. But government work. Starting with the initial assertion by Mr. Pitsnoggle that the Twombly, her complaint was filed following Twombly and prior to Iqbal. It should be noted that Twombly was initially decided in 2007. The complaint was filed in 2008. And then Iqbal came along, and Iqbal simply explained the application of Twombly to a 1983 cause of action. So Iqbal is very much relevant to the Court's decision today. And I think when the Court takes a look at the Iqbal decision, the Court will agree that the allegations that were made in Iqbal that were found to be insufficient are largely the same as the allegations that have been made here today in an effort to somehow create municipal liability on behalf of Washoe County. The lower court found, and the record shows, that there are nothing more in the complaint as against Washoe County than bare allegations of a policy or custom, which is attributable for the constitutional deprivations that Mr. Pitsnoggle alleges. There are no allegations as to who the policymaker is. There are no allegations as to the person who created the policy and then promulgated that policy. There are no allegations that say that the policy was the moving force of any of the constitutional deprivations. What there are are a lot of allegations that might arguably or charitably demonstrate that there could be some sort of a constitutional violation. But as the Court has noticed, as Mr. Christensen just said, it's not enough to do that. You have to have a municipal policy that is properly attributable to a municipality. And there's only a few ways to do that. One of the ways to do that is to allege that there's a longstanding practice or custom which amounts to the standard operating procedure of the county. There's no allegations to that effect in here. There's no allegations that show that there was a tort committed by an official policymaking authority. For the first time today, we're hearing an assertion that perhaps Mr. Greco had that type of policymaking authority. I would note that doesn't show up in the complaint anywhere. I would note it doesn't show up, didn't show up in the opposition brief on the motion to dismiss stage. That allegation didn't show up in the appellate brief and it didn't show up in the reply. It's being made for the very first time here. And that by itself is nothing more than a bare assertion, a bald allegation. There are no facts that have been provided by Mr. Pitsnoggle that would support that allegation. There's obviously not been any sort of an explicit policy cited to by Mr. Pitsnoggle. And unless I misheard Mr. Pitsnoggle's counsel, it doesn't sound like there's going to be an assertion that there was some kind of a failure to train. And to the extent that that continues to be a viable claim, I would note that Connick v. Thompson, the U.S. Supreme Court case, precludes that. Connick v. Thompson held that it ordinarily for a failure to train case, there needs to be a series of unconstitutional acts that put the policymaker on notice of a need for a failure to train. Obviously, the only allegations in this case concern specifically Mr. Pitsnoggle. Turning to the issue of leave to amend, as Mr. Christensen just noted, there's a recent case, Doherty v. City of Covina, 654F3D892, that talks about the failure of a plaintiff to properly allege complaints that will sustain a 1983 cause of action. And that court specifically noted that despite multiple opportunities to allege facts, not just plain, fair allegations, but to actually allege facts, the plaintiff had failed to do so. Specifically, the court said that Doherty failed to allege any facts demonstrating that his constitutional deprivation was a result of a customer practice of the City of Covina or that the customer practice was the moving force behind his constitutional deprivation. That's precisely what the court in our case held. The next sentence says, Doherty could have identified any such fact in his briefing or argument before us, but he did not. The court then determined that the failure to do so demonstrated that amendment was futile. The county would submit, the county does submit, that again, the failure to allege any facts that demonstrate who the policymaker was, what the specific unconstitutional policy was, or the fact that a policy caused a constitutional deprivation precludes Mr. Pitznagel from having the ability to amend his complaint. I also wanted to address some of the arguments that were made by Mr. Pitznagel's counsel. There was an allegation that the motive in this case for the alleged constitutional deprivations was some sort of retaliation. Well, the Iqbal case specifically held that a court is to use its own judicial wisdom and common sense to determine whether or not someone can state a claim. The Washington County District Attorney's Office is not part of the City of Reno and does not give advice to the Reno Police Department. There is no interest for the county in whether or not the City of Reno has properly implemented SWAT regulations or properly taken some action, which, as Mr. Christensen noted after Mr. Pitznagel allegedly claimed that there were problems with the SWAT and the City of Reno remedied that problem. But in any case, with regard to this defendant with Washoe County, that's not a proper motive. So, again, turning to the assertion that the complaint could be amended and that the complaint could be amended to say, well, and as I heard Mr. Pitznagel's counsel say, was to add that the decision of persons with final policymaker authority promulgated policy. That, again, by itself, if that's the assertion that goes in, that once again is purely a legal conclusion. There's no facts that support that, and that is not a sufficient basis on which to amend this. I think it's clear that despite multiple opportunities, the plaintiff in this case has provided this court, neither this court nor the lower court, with any evidence that would suggest that there's a policy or custom of Washoe County. Mr. Pitznagel was a 12-year veteran of the Reno Police Department, according to his own complaint. If he had some sort of evidence, if he had something that demonstrated that somehow the Washoe County District Attorney's Office routinely engaged in malicious prosecutions or engaged in the kinds of activities of which he has accused them, Mr. Pitznagel should have brought those forward by now. Surely he must be aware of some case. He doesn't have anything. Before this court should allow Mr. Pitznagel to have a prosecutor like Mr. Greco with an unblemished record to sit in a chair and have to be deposed, Mr. Pitznagel should allege something that resembles a policy or a custom. The same holds true with Ms. Wyatt, who was the investigator that was named, and I can assume that my boss, Mr. Gamick, would also get called to sit in a deposition. Before those things happen, I would urge this Court to make Mr. Pitznagel make an appropriate allegation. He hasn't done so. His failure to do so demonstrates futility. I would request that the Court affirm the decision of the lower court. All right. Thank you, counsel. Rebuttal. The complaint clearly states that Pullman, who was the chief of police, understood that changes needed to be made to the SWAT team, and the changes that were made were that Sergeant Pitznagel was forced to resign. Those facts were brought out during discovery. The fact that Bradshaw was the head of internal affairs and that her investigation was adopted by the chief of police, means that policymakers were absolutely the moving force in the instigation of both the prosecution in this case and the termination of his employment. There does not have to be motive by the Washoe County DA, other than to go forward with a case that has obvious flaws, obvious failure to provide exculpatory evidence. It is not required that the Washoe County District Attorney's Office have the same motivation to retaliate because they are not in an employment relationship with Sergeant Pitznagel. The Washoe District Attorney, the Deputy District Attorney, is unquestionably a policymaker. When he is prosecuting Sergeant Pitznagel, it was his decision, and his final decision, what evidence was turned over to the grand jury for that indictment. The complaint is replete with facts that officers acted contrary to what should have been the policy of the department and that that was adopted and used by the chief of police for his termination. Do you have any evidence of custom at all? I didn't see a shred. I see no evidence, Your Honor, whatsoever of custom. Okay. I see that the facts state, and you know the one thing we learned from Iqbal is you can't just make these legal recitations. You've got to, you know, use the facts. And the facts certainly point to the adoption by an official of a final official decision that was policy, no matter what the allegations say about custom. Who is responsible for the policy that you say existed? Chief of police, Pullman. And what policy was it that he adopted that you say is involved? That he terminated Paul Pitznagel and allowed the prosecution of Paul Pitznagel to go forward based upon false facts. He didn't have any – I don't see any evidence that he was involved in that criminal investigation. Wasn't that turned over to another department, Sparks? That – all of the officers who testified at the – well, most of the officers who testified were Reno PD. As witnesses. As witnesses. But who conducted the investigation? Which police department? Well, the – it was begun by the city of Reno, and the city of Reno turned it over to the city of Sparks. Which is usual and customary, and Sparks was dismissed out of this case. It settled. The city of Sparks settled with the – Okay, well, it's not here. It's not here in this case, right. So Reno – they got out of it ballgame and turned it over to another department that then gave it to the district attorney's office. Other than the city of Reno did most of the investigation, that was turned over to the city of Sparks. And that is alleged in here. They did the first interviews with the – Where's the – what's the policy that you're talking about? That – the fact that they interviewed witnesses without tape recording them, they didn't advise him of his garrity rights, the fact that they – It's not policy. These are just things that happened that you don't like. And then that was adopted by the chief of police when he determined that, number one – Not as a policy. I believe, Your Honor, when he made that official decision – You know, you have to understand we're dealing with policy, which is different from things that happen. I do, Your Honor. And I believe that once the head, the chief of police adopts it as his opinion, it became a policy, and that's what the law is referring to in that third leg. Thank you. Thank you, counsel. Thank you. Thank you to all counsel. The case just argued is submitted for decision by the court. That completes our session for today. We are in recess until 9 a.m. tomorrow morning. Thank you. All rise.
judges: Cudahy, Trott, Rawlinson